UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBBY SNEED,<br><br>       Petitioner,<br><br>v.<br><br>TIM HOOPER, Warden of Louisiana State Penitentiary; BRIAN SPILLMAN, Sheriff of West Feliciana Parish; and JAMES LEBLANC, Secretary of the Louisiana Department of Public Safety & Corrections.<br><br>       Respondent. | Case No. 21-cv-704 |

**REPLY**

Nothing in Respondents' memoranda supports the constitutionality of Mr. Sneed's ongoing imprisonment; to the contrary, Respondents offer yet more support for Mr. Sneed's contention that his federal rights have been violated (and this Court's intervention is both proper and essential). This Reply addresses the question of "Exhaustion" and "AEDPA Deference" contained in Respondent LeBlanc and Hooper's memorandum. It then brings to the Court's attention additional evidence of bad faith on the part of Respondents, before briefly considering the contentions contained in Sheriff Spillman's memorandum. It concludes by suggesting that the emergency evidentiary hearing Mr. Sneed previously requested on his First Amendment claim (*see* Doc. 13) may be unnecessary, given the existing record and Respondents' failure to deny on the merits Mr. Sneed's claims of ongoing First Amendment retaliation.

    **I.**    **Exhaustion**

Respondents' "exhaustion" arguments (and related contention that Mr. Sneed cannot assert his exhausted First Amendment claim, but rather must file a complaint under 42 U.S.C. §

1

1983) are breathtaking in their disingenuity. For three months, Respondents have insisted (1) that Louisiana courts lack jurisdiction to entertain a habeas petition alleging violations of the First and Fourteenth Amendment, and (2) are powerless to grant meaningful relief. It appears they have won a formidable legal victory on Wednesday night, vindicating their latter contention (and perhaps their former contention, too, insofar as the Louisiana Supreme Court has recast his habeas petition alleging First and Fourteenth Amendment violations as just an "appeal" of an improperly denied hearing under state law, *see* La. R.S. 15:574.11).

As this Court previously ruled when the parties conferred on December 14, Mr. Sneed had "exhausted" his claims in state court by "fairly presenting" them to the Louisiana Supreme Court. Mr. Sneed already did everything he needed to do: he "fairly presented" his First Amendment and Fourteenth Amendment claims to the 19th Judicial District Court (which granted him relief), the First Circuit Court of Appeals (which granted him relief), and the Louisiana Supreme Court (which initially did, but ultimately did not). He has afforded the Louisiana courts at all levels an opportunity to vindicate his federal constitutional rights. This Court ruled as much on Tuesday without objection from Secretary LeBlanc. When the Louisiana courts declined the opportunity to grant him his freedom—holding Louisiana law precluded such an outcome—it abdicated its responsibility to give effect to Mr. Sneed's federal constitutional rights.

If there were any doubt about the issue earlier in this week, *Mr. Sneed certainly has "exhausted" his federal claims now*. Under 28 U.S.C. § 2254(b)(1)(B),[1] AEDPA's exhaustion

---

[1] Although perhaps only a matter of semantics, Respondents incorrectly assumes that Mr. Sneed's habeas petition is brought under § 2254 rather than § 2241. But he is not in custody "pursuant to the judgment of a State court." Rather, Mr. Sneed is in custody solely because Pearl Wise (a member of the Board of Parole), minutes after an adverse appellate court ruling, signed a piece of paper with the words "WARRANT" and "NO BOND" printed on it. None of the four cases cited by Respondents hold that such a document constitutes a "judgment of a State court."

requirement does not bar a federal court's power to grant relief if there is "an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." *See generally* Eve Brensike Primus, *Equitable Gateways: Toward Expanded Federal Habeas Corpus Review of State Court Criminal Convictions*, 61 Arizona L. Rev. 291, 293 (2019) (explaining that it is a "mistake . . . to think that habeas litigation is just a Kafkaesque nightmare [because numerous] equitable gateways" exist). That is now unquestionably the case here: AEDPA does not require him to endlessly litigate this matter in a forum that (just announced it) cannot or will not provide him relief. The Louisiana Supreme Court's decision *reversing* the trial Court's re-granting of Mr. Sneed's habeas petition and "remand" of his habeas petition "*to the Board of Parole*" settles the matter.[2]

Respondents' unsupported argument with respect to Mr. Sneed's First Amendment claims—which Respondents to do dispute have been "exhausted"—must be brought instead in an action under 42 U.S.C. § 1983 rather than through a habeas petition, is staggering. As this Court well knows, on June 10, 2021, the very same lawyer argued to this Court that Mr. Sneed's First Amendment retaliation claim brought "under 42 U.S.C § 1983 must be dismissed as Plaintiff seeks an immediate release from incarceration," *Sneed v. Abbott*, 21-cv-00279-JWD-RLB, Doc. 16 (Motion to Dismiss), p. 2, and hence should be asserted in "a habeas corpus proceeding," Doc. 16-1 (Memorandum in Support of Motion to Dismiss), p. 5. This Court

---

[2] Further illustrating the futility of attempting to assert federal constitutional claims in state court, Respondents omit that the sole channel available to Mr. Sneed now in state court is remarkably confined. After Mr. Sneed's habeas petition is "remanded" to the parole board, any subsequent review "shall be confined to the revocation record" and no discovery is allowed. *See* La. R.S. 15:574.7(C). And, assuming Mr. Sneed *wins*, he will simply be caught in an endless loop: as Respondents know, the sole remedy then be another "remand [of the matter] for further revocation proceedings." *Id.* Thus, federal review can be postponed or foreclosed indefinitely; in such situations, invocation of "comity" is insincere at best.

agreed. *See Sneed v. Abbott*, 21-cv-00279-JWD-RLB, Doc. 23 (Ruling & Order) (M.D.La. 07/20/21) (discussing *Heck v. Humphrey*, 512 U.S. 477 (1994)). Now, without a modicum of authority, Respondents urge the exact opposite position.[3]

## II.     AEDPA Deference

The state courts did not consider Mr. Sneed's First Amendment claim; no deference is owed.

The state courts did consider Mr. Sneed's Fourteenth Amendment claim, and their analysis of the issue should be given preclusive effect: the Louisiana Supreme Court expressly held the following: (1) Mr. Sneed "was scheduled for release on March 29, 2021"; (2) "[Mr. Sneed] was held in physical custody after his release date"; (3) "[Mr. Sneed's] limited liberty interests attached once his release date passed. See, **Morrisey v. Brewer**, 408 U.S. 471, 482 (1972)"; (4) "[P]rocedural due process dictates that petitioner was entitled to a revocation hearing"; and (5) that Mr. Sneed was denied that revocation hearing. *See* Ex. 1. They got it right. This is an admittedly odd procedural posture for a federal habeas petition: ordinarily, a federal habeas petitioner seeks to challenge the factual or legal determinations of the state courts. But Mr. Sneed argues that the Louisiana Supreme Court got it precisely *right* when evaluating the relevant factual and legal issues; the Louisiana Supreme Court subsequently got it *wrong* when it decided that state law trumped these federal guarantees and precluded relief.

The Louisiana Supreme Court's ultimate decision to "remand" Mr. Sneed's habeas petition to the parole board was not a decision (and did not purport to be a decision) about the

---

[3]     *Cook v. Texas Dep't of Crim. Just. Transitional Plan. Dep't*, 37 F.3d 166 (5th Cir. 1994) does not even remotely support (or address) Respondents' assertion that Mr. Sneed cannot raise First Amendment retaliation claims in his habeas petition.

4

scope of the Fourteenth Amendment. Indeed, as Mr. Sneed urged in opposition to Respondents' emergency writ application in that matter:

> [I]t appears Respondents return to an argument that they have made from the beginning of this litigation, which this Court already rejected. Francis Abbott and the Board of Parole (but notably not DPSC) contend that it doesn't matter if they violate the First Amendment or the Fourteenth Amendment: Louisiana courts simply lack the authority to grant release to someone imprisoned in violation of the U.S. Constitution. That cannot be Louisiana law.

*See* Ex. 2 (Mr. Sneed's Opposition in Emergency Writ Application in Case No. 2021-KK-01863). But the Louisiana Supreme Court answered that this is *precisely* was Louisiana law (specifically, La. R.S. 15: 574.11(C)) commands. *See* Ex. 3 (Per Curiam Opinion in Case No. 2021-KK-01863). The Louisiana Supreme Court has evidently decided to pretend that Mr. Sneed's habeas petition alleging violations of the First and Fourteenth Amendment is simply an "appeal" of an improperly denied revocation hearing, *see* La. R.S. 15:574.11, and limited relief accordingly. It is as though Mr. Sneed's federal constitutional claims have now vanished.

### III.   Additional Indicia of Bad Faith

There is additional reason to believe that the State of Louisiana's current position is advanced in bad faith: their own affidavits and court filings.

Pearl Wise appears to have signed the "WARRANT" on December 10, 2021, alleging that Mr. Sneed on November 9, 2021 "violated the conditions of his parole" and was "paroled" as of March 29, 2021. But three days *later*, on December 13, 2021, the Board of Parole's Executive Director Francis Abbott executed an affidavit reading as follows:

> [A] Certificate of Parole . . . must be approved by a Member of the Committee, signed by the warden of the relevant facility, and agreed to and signed by the prisoner *before such a Certificate of Parole Becomes operative. . . . The parole is not effective* or final until the formal parole agreement is executed by the offender. *The parole certificate shall not become effective and in force until the conditions are agreed to, signed, and accepted by the offender*. . . . It is clear that the

5

> Committee did not approve or issue a Certificate of Parole to Mr. Bobby Sneed [before December 10, 2021] . . . . The above recited facts are true and correct to the best of my personal knowledge, and are based on my personal review of records in my possession.

*See* Ex. 4 (Affidavit of Francis Abbott) (emphasis added). The affidavit was notarized by Grant Willis, now counsel for Secretary LeBlanc.

Likewise, on December 14, 2021, the Board of Parole made the following representations in a separate court filing:

> It is abundantly clear that [Mr. Sneed]'s procedural claims are meritless as [he] has no procedural due process rights as to the Committee's parole decisions . . . . As to Petitioner's due process claims, the United States Supreme Court and the Louisiana Supreme Court have consistently held that Louisiana inmates have no inherent or constitutionally protected liberty interest or right to release on parole, which forecloses all of Petitioner's due process claims herein.

*See* Emergency Writ Application (Doc. 13-10), p. 17. The chief problem with Mr. Sneed's legal contentions throughout this litigation, the Board of Parole insisted *on December 14*, was that Mr. Sneed was complaining of parole board conduct that occurred "*prior to his release on parole.*" *Id.*, at 18 (emphasis added). And because Mr. Sneed had not been "*release[d] on parole*" as of March 29 (or November 9), the Board of Parole persisted in arguing, "Louisiana law and state and federal jurisprudence unequivocally and persistently hold that [Mr. Sneed] has not and cannot state a claim for any alleged violation of due process here." *Id.* at 19 (emphasis added). How the same parties can now allege Mr. Sneed committed a parole violation on November 9—and, indeed, arrested him on December 10 on that basis—is never explained, because it cannot be explained.

And it cannot be argued that the Board of Parole in their recent filings was merely advancing their own mistaken understanding of Louisiana law, subsequently rejected by the Louisiana Supreme Court, which they now correct in filings before *this Court* in light of

6

subsequent legal developments. First, their sworn positions that Mr. Sneed was not really a "parolee" or was never "released on parole" were adopted *after* Pearl Wise issued her "WARRANT," and *after* Mr. Sneed was transported the West Feliciana Detention Center at her behest. This indicates that the Board of Parole acted to jail Mr. Sneed on December 10 at a time when the Board subjectively believed it lacked any legal authority to do so. But more importantly, in no way, shape, or form has the Louisiana Supreme Court's recent rulings rejected the critical factual positions that the Board of Parole admits: it remains undisputed that Mr. Sneed was not "released on parole" until December 10, and that his "parole certificate [did] not become effective and in force until the conditions [were] agreed to, signed, and accepted by the offender" on December 10. Mr. Sneed, the Board of Parole, and the Louisiana Supreme Court all agree on these facts. The trial court and the Louisiana Supreme Court—in determining that Mr. Sneed had a "liberty" interest that attached when his release date came and went on March 29, 2021—did not base its analysis on whether Mr. Sneed had actually been "released on parole" or had an "operative Certificate of Parole." *See* {}. It simply found, based on Francis Abbott's own emails, that the Board of Parole and Secretary LeBlanc unlawfully kept Mr. Sneed imprisoned after his release date; by not affording him any sort of legally valid revocation hearing at any point, the State of Louisiana has been depriving Mr. Sneed of "liberty" without due process of law since March 29, 2021.

Mr. Sneed has been consistent in his position, and his arguments have now been confirmed by the Louisiana courts. He has never argued (and no Louisiana court has ever held) that Mr. Sneed was "released on parole" or was "a parolee" between March 2021 and December 2021. Rather, Mr. Sneed contends (and the Louisiana courts at all levels have confirmed) that he *should have* been released on parole on March 29, 2021, but he *was not*. He was an illegally

7

over-detained prisoner of the Department of Public Safety & Corrections, not a "parolee." He enjoyed a Fourteenth Amendment "liberty" interest that attached on March 29, 2021, but Respondents immediately and unconstitutionally "deprived" him of that "liberty" without due process, so he never *enjoyed* it as a parolee. This critical fact fatally undermines any attempt to re-imprison him based on an alleged "parole violation" on November 9, 2021.

Additionally, there has been a disturbing pattern of defiance of lawful court orders by Respondents in the state court. Time and again, while orders to "immediately release" Mr. Sneed were in effect, state officials simply refused to act. Mr. Sneed submits to this court his memorandum in support of contempt sanctions against Respondent Hooper before the 19th Judicial District Court; that matter will be heard at 9:00 a.m. on the morning of Monday, December 20. *See* Ex. 5. The correspondence contained in the memorandum provides further evidence in support of his First Amendment claim.

## IV.   Sheriff Spillman's Arguments

Sheriff Spillman's filing (like Respondent LeBlanc and Hooper's filing) fails to answer basic questions posed by the Court at the December 14 status conference: How could Mr. Sneed have committed a "parole violation" at a time when Mr. Sneed was not released on parole and had not been provided notice of his conditions of parole? Moreover, how could the document signed by Pearl Wise constitute a valid arrest warrant when it flouts the most basic requirements of Louisiana law governing the issuance of such detainers? Again, Respondents have been afforded opportunity to put forward some legal justification: they have provided none.

First, Mr. Sneed cannot be held on suspicion of committing a "parole violation" that allegedly occurred when, it is undisputed, he was not "a parolee" and not "released on parole." Mr. Sneed has already briefed that Louisiana law does not allow this, *see* Notice of Changed

Custody, Doc. 7 (citing, e.g., *Jenkins v. LeBlanc*, 2010-2277 (La. App. 1 Cir. 6/10/11)), and Francis Abbott's affidavit of December 13 confirms it:

> [A] Certificate of Parole . . . must be approved by a Member of the Committee, signed by the warden of the relevant facility, and agreed to and signed by the prisoner *before such a Certificate of Parole Becomes operative. . . . The parole is not effective* or final until the formal parole agreement is executed by the offender. *The parole certificate shall not become effective and in force until the conditions are agreed to, signed, and accepted by the offender*. . . . It is clear that the Committee did not approve or issue a Certificate of Parole to Mr. Bobby Sneed [before December 10, 2021] . . . . The above recited facts are true and correct to the best of my personal knowledge, and are based on my personal review of records in my possession.

*See* Ex. 4 (Affidavit of Francis Abbott) (emphasis added). Respondents cite no law to the contrary.

Second, the purported "facially valid" warrant is not facially valid. Louisiana law dictates procedures for parole revocations:

> If the chief probation and parole officer, *upon recommendation by a parole officer*, has reasonable cause to believe that a parolee has violated the conditions of parole, he shall notify the committee, *and shall cause the appropriate parole officer to submit the parolee's record to the committee*. After consideration of the record submitted, and after such further investigation as it may deem necessary, the committee may order . . . that the parolee be arrested.

*See* La. R.S. 15:574.7(D). It is undisputed that no such procedure was followed here; Pearl Wise just ordered Mr. Sneed rearrested moments after he was due to walk out of Angola prison. *See* Ex. 5 (providing timeline of events December 9 and December 10); Ex. 6 (email to Warden Hooper from Parole Board time-stamped 1:57 PM CST).[4]

---

[4] *See also* Nick Chrastil, *After momentary 'release,' Angola prisoner Bobby Sneed rearrested and put in local jail*, THE LENS, Dec. 16, 2021, at https://thelensnola.org/2021/12/16/after-momentary-release-angola-prisoner-bobby-sneed-rearrested-and-put-in-local-jail/.

9

## V. Conclusion

Conspicuously, no Respondent has denied that Mr. Sneed is being retaliated against in violation of the First Amendment. Sheriff Spillman, through counsel, stated on the record at the December 14 status conference that it appeared "shenanigans" were afoot; Secretary LeBlanc offers weakly "this claim does not belong in a habeas petition." *See* Doc. 16, at 9. On the merits, Respondent LeBlanc (without explaining why) offers no more than suggesting other cases were "more egregious." *Id.*, at 10. In light of these representations, Mr. Sneed submits that this Court may grant relief on his First Amendment claim without the need for further evidentiary hearings.

Tomorrow is Mr. Sneed's grandson's funeral and his 75th birthday. While cognizant of this case's convoluted procedural history, he respectfully prays that this Court grant him his long-delayed freedom without further delay.

Respectfully submitted,

*/s/ Thomas Frampton*
**THOMAS FRAMPTON, Bar No. 35775**
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903
(202) 352-8341 (cell)
tframpton@law.virginia.edu
*Affiliation for identification only*

/s/Justin B. Schmidt
**JUSTIN SCHMIDT, Bar No. 25864**
1506 Seventh Street
New Orleans, LA  70115
Mobile: (504) 451-6567
Facsimile: (504) 899-9217
Email:  Justinschmidtlaw@gmail.com

***Attorneys for Bobby Sneed***